UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:21-cr-00024-BJB-LLK

**UNITED STATES OF AMERICA**                                                                                    **PLAINTIFF**

**v.**

**MAURICUS S. HAYNES**                                                                                                **DEFENDANT**

### REPORT AND RECOMMENDATION

Defendant Mauricus S. Haynes (Haynes) is charged with being a felon in possession of a firearm. [Indictment, Doc. 11]. Haynes filed a motion to suppress, to which the United States responded in opposition, and Haynes replied. [Doc. 29, 36, 38]. The Court referred the matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. 636(b)(1)(B) "to conduct any hearings and prepare a report and recommendation." [Doc. 33]. On September 6, 2022, the undersigned conducted an evidentiary hearing on Haynes' motion to suppress. [Transcript, Doc. 40]. Haynes' post-hearing memorandum is at Doc. 47, and the United States' response in opposition is at Doc. 48. The motion to suppress [Doc. 29] is ripe for ruling.

For the reasons below, the traffic stop, which resulted in discovery of the firearm, was supported by probable cause. Accordingly, the RECOMMENDATION will be that the Court DENY Haynes' motion to suppress [Doc. 29].

### Background facts

Officer / Detective Blake Quinn (Quinn) testified that on February 13, 2021, the day before the incident giving rise to the motion to suppress, he observed a Dodge Charger. [Doc. 40 at PageID.124, 126, 165]. The Charger was registered to Haynes and parked in the area of the 2020 Grill on North Eighth Street in Paducah, Kentucky. *Id.* Quinn explained that "I was unable to locate [Haynes] at that time." *Id.* at 124. It is unclear why Quinn felt the need to locate Haynes on February 13, 2021.

The next day, on February 14, 2021, in the early morning hours, Quinn observed Haynes leave the 2020 Grill in his gray Charger. *Id.* Quinn followed the Charger as it proceeded down North Eighth Street toward a red light at the intersection of North Eighth Street and Park Avenue. *Id.* Another vehicle was already stopped at the red light. *Id.* Haynes pulled his vehicle to the right of the stopped vehicle and then turned right onto Park Avenue. *Id.* at 124-28.

Quinn testified that he "initiated a traffic stop … for … improper lane usage." *Id.* at 125. Quinn explained that, based on his observations, he believed that Haynes drove his vehicle into and turned from the shoulder of the roadway, and not from a travel or turn lane. *Id.* at 125-26. While viewing the dash cam video of the above in open court, Quinn further observed that "it appears … that Mr. Haynes switches from the travel lane here into this shoulder area off to the right, or parking area, across that white line without signaling." *Id.* at 130.

After Quinn initiated the stop of Haynes' vehicle, he was joined by another officer, Logan Barrow (Barrow). At one point, Quinn was at the driver's side window of Haynes' vehicle and Barrow was at the passenger's side window. *Id.* at 125, 132-34. Quinn testified that he asked Haynes to step out of his vehicle. *Id.*

Quinn explained that his purpose in asking Haynes to step out of his vehicle was to continue his investigation from the day before:

> *Quinn:* So through the course of the previous investigation, I was able to learn about Mr. Haynes and his criminal history. And during that time, I was -- I became familiar with him. As I walked up to the vehicle, I immediately recognized him as the person who had fled from me in the previous case. And so I'd asked him to step out of the vehicle where I could continue that investigation.
>
> *United States:* You said you were familiar with his criminal history. Were you aware of his status as a convicted felon at the time the stop began?
>
> *Quinn:* Yes.

*Id.* at 134.

After Haynes exited, Barrow saw a firearm stashed in the driver's side door compartment. *Id.* at 125, 133. The officers attempted to detain Haynes, but Haynes successfully resisted arrest and fled on foot.

## The traffic stop was supported by probable cause.

In his original motion [Doc. 29] and in his post-hearing memorandum [Doc. 47], Haynes argues that the traffic stop was not supported by probable cause.

Kentucky Revised Statutes (KRS) 189.340 provides, in pertinent part, that:

(3) The operator of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:

(a) When the vehicle overtaken is making or about to make a left turn;

(b) Upon a roadway with unobstructed pavement of sufficient width for two (2) or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle.

KRS 189.340. In other words, passing on the right is permissible only when there is a "roadway" of two or more lanes wide enough to permit vehicles to move "lawfully" in the same direction. KRS 189.010(10) clarifies that "roadway" means "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." KRS 189.010(10). In other words, "roadway" specifically excludes "shoulder." *Id.*

Kentucky Department of Highways engineer Everett Lloyd Wilson testified that the area from which Haynes turned right onto Park Avenue was part of the shoulder of North Eighth Street as opposed to a travel or turn lane. *Id.* at 175-79. Mr. Wilson explained that, if this area had been a turn lane, a solid white "stop bar" would have extended all the way to the edge. *Id.* at 176-77, 182-83.

It follows that Quinn had probable cause to believe that he had just witnessed a violation of KRS 189.340(3)(b). Additionally, KRS 189.380(2) requires a motorist to signal continuously for not less than the last 100 feet traveled by the motor vehicle prior to the turn. Quinn testified that Haynes only signaled once his vehicle had stopped. Therefore, Quinn also had probable cause to believe that he had just witnessed a violation of KRS 189.380(2).

It follows that the traffic stop in this case was supported by multiple probable causes.

**Even if there was no probable cause for a traffic stop, Quinn reasonably believed there was.**

The facts of this case are analogous to those in *United States v. Stevenson*, 43 F.4th 641 (6th Cir. 2022). A police officer stopped Stevenson after observing that he did not stop before driving onto what the officer took to be a "sidewalk area extending across the ... driveway." Ohio Rev. Code § 4511.431(A). This resulted in discovery of a gun in the vehicle, a charge of being a felon in possession of a firearm, and a motion to suppress the firearm.

Whereas in the present case the parties dispute whether Haynes stopped in a proper lane or on the shoulder, the parties in Stevenson disputed whether the area in question was a "sidewalk area." In *Stevenson*, the United States prevailed in its argument that, even if the police officer did not correctly interpret Ohio Rev. Code § 4511.431(A), he at least made a reasonable mistake of law. In ruling on a motion to suppress, the federal district court's role is not to "arrive at the correct interpretation of the state [traffic] law but simply to decide whether the officer's interpretation of that law was objectively reasonable." *Stevenson*, 43 F.4th at 646. For the officer's interpretation to be objectively unreasonable, the law must have "clearly permitted [the defendant's] conduct." *Id.* "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake." *Id.* (quoting *Heien v. North Carolina*, 574 U.S. 54, 70 (2014)).

In this case, even if Quinn's interpretation of KRS 189.340(3)(b) was mistaken, it was objectively reasonable.

**Haynes post-hearing arguments for suppression are unpersuasive.**

In his post-hearing memorandum [Doc. 47], Haynes makes four additional arguments in support of suppression of the firearm, none of which is persuasive.[1]

---

[1] This report declines the United States' offer [Doc. 48 at PageID.235] to deem the arguments waived for not being stated directly in the original motion [Doc. 29].

First, Haynes argues that the traffic stop was pretextual. [Doc. 47 at PageID.214, 217, 225, 230].

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). It matters not whether the "stated reason for the stop may have been pretextual … so long as the officer has probable cause to believe a traffic violation occurred." *United States v. Jones*, No. 5:21-CR-012-TBR, 2022 WL 711129, at *2 (W.D. Ky. Mar. 9, 2022) (citing *Whren*, 517 U.S. at 812-13).

Second, Haynes argues that the traffic stop was improperly extended when Quinn asked Haynes to exit his vehicle to ask him some questions in a matter unrelated to the traffic stop. [Doc. 47 at PageID.222].

With or without this investigative purpose, Quinn could have asked Haynes to exit his vehicle for safety purposes alone. This is because "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977). The government's "legitimate and weighty" interest in officer safety outweighs the "de minimis" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Id.* More recently, in *Maryland v. Wilson*, the Supreme Court reaffirmed that an "officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 U.S. 408, 415 (1997).

Third, Haynes argues that violations of *Brady v. Maryland*, 373 U.S. 83 (1963) occurred in this case when the "government failed to provide all of the relevant discovery materials in this matter prior to the suppression hearing" and, in particular, when it failed to "produce information obtained from the search of Mr. Haynes's cell phone." [Doc. 47 at PageID.230].

According to Plaintiff, this *Brady* violation constitutes a reason "why the evidence in this case should be suppressed." *Id.* at PageID.216. Haynes cites and this report finds no authority for the

5

proposition that granting a motion to suppress would be an appropriate remedy for the *Brady* violation alleged in this case.

Fourth, Haynes argues that search of the vehicle was improper. [Doc. 47 at PageID.233].

Because Haynes fled on foot, leaving his vehicle behind, the officers had to ensure that Haynes' vehicle would be towed. [Doc. 40 at PageID.136]. Assuming the officers did not retrieve the firearm, which Officer Barrow saw, before they left the scene, this would have resulted in inevitable discovery of the firearm as part of a vehicle inventory search.

## RECOMMENDATION

Because the traffic stop was supported by probably cause, the Magistrate Judge RECOMMENDS that the Court DENY Haynes' motion to suppress [Doc. 29].

January 25, 2023

*Lanny King, Magistrate Judge*
*United States District Court*

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

January 25, 2023

*Lanny King, Magistrate Judge*
*United States District Court*